***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gregory and the briefs and arguments on appeal. The Deputy Commissioner's Opinion and Award is REVERSED in part and AFFIRMED in part.
 ***********
Plaintiff's motion to consider new evidence is HEREBY DENIED.
 ***********
The undersigned finds as fact and concludes of matters of law which were entered into by the parties at the hearing before the Deputy Commissioner the following:
 STIPULATIONS
1. An employment relationship existed between plaintiff-employee and defendant-employer at all relevant times. There was insurance coverage at all relevant times. All parties are properly before the Commission, and the Commission has jurisdiction over the parties and subject matter.
2. All parties have been correctly designated and there is no question of misjoinder or nonjoinder of parties.
3. No party is appearing in a representative capacity.
4. Plaintiff suffered a compensable injury to her back on or about March 29, 2000 that is admitted by defendant.
The parties entered into a Pre-Trial Agreement, which was received into evidence as Stipulated Exhibit #1. In addition, the parties stipulated into evidence a packet of plaintiff's medical records, a Form 22 wage chart, a note from Triangle Orthopaedic Associates dated November 11, 2003 and the August 4, 2003 Order filed by Special Deputy Commissioner Robert J. Harris, labeled Stipulated Exhibits #2 through #5, respectively. Based upon the Form 22 wage chart, the parties indicated that the issue of average weekly wage could be resolved by agreement.
 ***********
Based upon all the competent evidence of record, the undersigned makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 60 years old and working for defendant-employer where she had been employed for approximately seven years as a substance abuse treatment supervisor and occasionally as a drug rehabilitation counselor at defendant-employer's criminal justice department's outpatient center. Plaintiff holds an undergraduate degree in literature and education and a master's degree in agency counseling.
2. On March 29, 2000, while working for defendant-employer, plaintiff sustained a compensable injury by accident when she fell down three to four stairs after being distracted by a bee. As a result of the fall, plaintiff hit her head against the wall and fell on her right side injuring her back.
3. While plaintiff did not immediately experience back pain, she developed back pain the day after her fall. Consequently, on March 31, 2000, plaintiff sought treatment with Dr. Aaron Miller at Research Triangle Occupational Health Service for neck and back pain. Plaintiff reported falling on her right leg and arm and awaking the next morning with swelling of the right wrist and low back pain. Plaintiff subsequently also developed neck pain, worse on the right side. Plaintiff was examined and diagnosed with cervical and lumbar strains. Plaintiff was treated conservatively with heat and medications and instructed to restrict her work to no lifting greater than thirty pounds with no repetitive bending. Thereafter, plaintiff returned to work with defendant-employer performing her normal job with the restrictions given by Dr. Miller.
4. Plaintiff returned to Dr. Miller on April 17, 2000 complaining of low back and left hip pain. Plaintiff reported no radicular symptoms. Plaintiff's sensation was intact and she was instructed to continue light duty work and conservative treatment including physical therapy. Plaintiff also underwent an x-ray of her left hip, which revealed no fractures and demonstrated that the joint was within normal limits. Thereafter, on April 26, 2000, plaintiff returned for evaluation complaining of pain down the back of her left leg to her knee without numbness or weakness. Due to plaintiff's continued complaints, she was referred for an orthopaedic evaluation at Triangle Orthopedics where she was seen by Dr. Peter Gilmer. Plaintiff was also referred for a course of physical therapy, which she underwent with Pro-Active therapy during April through June 2000.
5. On May 11, 2000, Dr. Gilmer reviewed plaintiff's x-rays and examined plaintiff who reported back pain and occasional bilateral pains in the anterior aspect of both thighs. Dr. Gilmer diagnosed plaintiff with a lumbar strain and believed that her back injury was a soft tissue injury that would improve with time. Dr. Gilmer recommended conservative treatment including physical therapy two times per week for approximately a month.
6. Plaintiff returned to Dr. Gilmer on June 7, 2000 and reported some improvement. Plaintiff reported not performing physical therapy due to fatigue from blood pressure medication complications. Plaintiff's neurologic examination was normal and she appeared to move more easily with some restriction of lumbar motion. Plaintiff reported being out of work. Dr. Gilmer encouraged plaintiff to participate in physical therapy and return to work. When plaintiff returned to Dr. Gilmer on July 7, 2000, her examination remained relatively the same. Plaintiff had not yet participated in physical therapy but was continuing to improve. Plaintiff reported that Vioxx was helpful. Dr. Gilmer injected plaintiff's left hip and gave plaintiff additional Vioxx. Dr. Gilmer gave plaintiff no restrictions and continued to emphasize conservative care.
7. On October 2, 2000, plaintiff returned to Dr. Gilmer's office and was seen by his physician's assistant. Plaintiff reported increased pain over the last couple of weeks after a period of improvement. Plaintiff was referred to Rehab Medicine within Triangle Orthopedics for further evaluation. Accordingly, on October 27, 2000, plaintiff was seen by Dr. Raphael Orenstein, also with Triangle Orthopedics. Dr. Orenstein examined plaintiff who complained of pain, headaches, and some left leg weakness. Plaintiff reported being out of work the prior week due to pain but returning to work that week after improvement. Dr. Orenstein diagnosed low back and left hip pain following plaintiff's March 29, 2000 injury. Dr. Orenstein found a component of myofascial pain in plaintiff's left hip and mild nonorganic signs on exam. Epidural or trigger point injections with physical therapy were considered but Dr. Orenstein first recommended an MRI, which was performed on November 14, 2000.
8. Plaintiff's MRI indicated disc desiccation and a mild disc bulges at levels L3 through S1 with possible compromise of the right nerve root at L3 and the left at L4 and L5. Dr. Orenstein reviewed the MRI on November 17, 2000, at which time he also examined plaintiff. Dr. Orenstein found some degenerative disc disease but more degenerative joint disease in the lower lumbar spine. Plaintiff reported continued pain and sleep difficulties and Dr. Orenstein recommended facet joint injections and Pamelor for sleep difficulties. Consequently, plaintiff underwent epidural steroid injections on November 27, 2000.
9. On December 15, 2000, plaintiff returned to Dr. Orenstein reporting improvement and little pain, which was attributable either to the injections or bed rest while recuperating from influenza. Plaintiff reported working but experiencing headaches, which caused her to miss three days from work. Plaintiff's straight leg tests were essentially negative and she had full strength in her lower extremities other than a mild decrease in her left hip. Dr. Orenstein recommended facet joint injections instead of epidural injections and then a course of physical therapy as well as continued medications.
10. On December 28, 2000, defendant filed a Form 60, admitting the compensability of plaintiff's claim. Since that time, defendants have paid for all of the medical treatment plaintiff has received for her back. However, defendants have denied authorization for treatment by Dr. Craig Derian.
11. On January 2, 2001, plaintiff underwent facet injections at the L4-5 and L5-S1 levels. Thereafter, on January 19, 2001, plaintiff returned to Dr. Orenstein and reported great improvement from the injections with a pain free two weeks. Plaintiff also reported participating in the physical therapy program, which she began on January 17, 2001. Plaintiff's straight leg tests were negative and her strength was good. Plaintiff was instructed to continue physical therapy and conservative treatment and follow up in two months.
12. On March 23, 2001, plaintiff returned to Dr. Orenstein and reported improvement until the previous day when her symptoms increased. Plaintiff reported attending physical therapy twice a week and performing home exercises. Dr. Orenstein recommended continued Vioxx and took plaintiff out of work for a day on March 26, 2001. Medial branch nerve blocks on the left were also considered and, on April 2, 2001, plaintiff underwent the procedure.
13. On May 4, 2001, Dr. Orenstein examined plaintiff who was somewhat improved and reported avoiding activities that exacerbated her pain. Dr. Orenstein recommended a walking program and prescribed Darvocet. Plaintiff again returned to Dr. Orenstein on June 29, 2001 and reported that every time she tries to increase her exercise program she experiences a flare-up of her pain. Plaintiff reported working and indicated that she did not fill the Darvocet prescription. Dr. Orenstein recommended a course of chiropractic treatment and for plaintiff to try the Darvocet for pain.
14. On October 22, 2001, plaintiff returned to Dr. Orenstein after approximately four months since her last visit. Plaintiff reported primarily increased neck pain with low back and knee pain. Plaintiff reported seeing the chiropractor regularly, which was beneficial until recently when she bent over and experienced increased pain. Plaintiff reported new neck pain without trauma, which began about five weeks earlier. She also reported working full time but missing some days due to increased back and neck pain. Plaintiff was prescribed additional conservative treatment including prolotherapy as well as a referral to a surgeon for evaluation. Plaintiff again returned on November 12, 2001 at which time her exam and Dr. Orenstein's recommendations remained the same.
15. On December 11, 2001, plaintiff returned to Dr. Orenstein and reported that physical therapy on her neck was beneficial. Dr. Orenstein proceeded with the prolotherapy and continued to recommend conservative treatment. Plaintiff again underwent prolotherapy on February 15, 2002.
16. On March 6, 2002, plaintiff underwent a cervical MRI, which revealed bulging on the right and stenosis at several levels. Plaintiff then returned to Dr. Orenstein on March 11, 2002. Plaintiff reported a worsening of her pain and that she had only taken three Vicodin and had not participated in physical therapy prior to February. Dr. Orenstein again performed prolotherapy and encouraged plaintiff to continue physical therapy for her neck. Plaintiff was written out of work for one day but to return to work the next day at full duty.
17. On May 10, 2002, three months after her last visit, plaintiff returned to Dr. Orenstein reporting increased pain radiating down her left leg. Plaintiff's pain had improved earlier due to a 2-month course of pneumonia, which resulted in bed-rest. Dr. Orenstein referred plaintiff for a surgical consult for a possible decompression.
18. On May 29, 2002, plaintiff returned to Dr. Gilmer for consultation regarding possible surgical management of her lower back and left leg problems. Dr. Gilmer found negative straight leg raise tests and noted that plaintiff appeared "fairly comfortable" and presented without a limp. According to Dr. Gilmer, plaintiff was not experiencing significant radicular symptoms, the MRI performed in November of 2000 was unimpressive, and decompressive surgery was not indicated. Dr. Gilmer also encouraged a conservative program to include an emphasis on walking.
19. Plaintiff returned to Dr. Orenstein in September and October 2002. Plaintiff began the walking program earlier, which was beneficial until she developed heel pain, and plantar fascitis for which Dr. Orenstein recommended physical therapy prior to maximum medical improvement. However, the physical therapy was denied by defendants and Dr. Orenstein recommended that plaintiff pursue it otherwise. Dr. Orenstein also recommended that plaintiff obtain a second opinion on surgery with Dr. Suh, as she continued to experience the same pain. However, plaintiff never saw Dr. Suh but instead was directed to Dr. Scott Sanitate.
20. On January 16, 2003, plaintiff was seen by Dr. Sanitate for a second opinion regarding possible surgical intervention. Dr. Sanitate examined plaintiff who reported back pain with occasional radiculopathy but working full-duty full-time without out missing significant work. Dr. Sanitate found no neurologic deficits upon examination and felt that surgery would be premature based on plaintiff's functional capacity. Dr. Sanitate suggested a Lidoderm Patch and possible acupuncture or repeat injections. As the evaluation was for a second opinion only, Dr. Sanitate did not recommend follow up treatment.
21. Thereafter, plaintiff did not return to Dr. Orenstein until four months later on May 14, 2003, at which time plaintiff reported fibromyalgia-like symptoms beginning about 4 weeks earlier. However, plaintiff also reported working full-time and beginning to walk after getting a puppy. Dr. Orenstein agreed with Dr. Gilmer and Dr. Sanitate that surgery was not indicated and found plaintiff at maximum medical improvement with a 10% permanent partial impairment rating to her back. Dr. Orenstein recommended that plaintiff follow up with him once a year or sooner for consideration of surgical intervention if plaintiff experienced increased left leg weakness or numbness.
22. On June 26, 2003, approximately a month after her last visit with Dr. Orenstein, plaintiff was seen by Dr. Derian for a second opinion of the rating to her back. Plaintiff reported pain radiating down her left leg but no numbness or tingling. Plaintiff's straight leg tests were negative and she ambulated without a limp. Overall, plaintiff's presentation was essentially the same as it was at the time of her last visit with Dr. Orenstein. Plaintiff's MRI was not available for review and Dr. Darien recommended a repeat MRI since the last one was performed approximately three years earlier. Dr. Darien did not believe plaintiff to be at maximum medical improvement but agreed that if she did not wish to consider further treatment options she would have a 10% rating to the back.
23. Further treatment by Dr. Derian is reasonably required and necessitated by the compensable injury by accident.
24. Plaintiff sought to change authorized treating physicians within a reasonable time.
25. Dr. Derian's records in evidence indicate a conservative history evaluating plaintiff and only mentions surgery as a possibility.
 ***********
Based upon the foregoing stipulations and findings of fact, the undersigned makes the following:
 CONCLUSIONS OF LAW
1. Given the circumstances of this case, the plaintiff is entitled to have Dr. Craig Derian designated as her authorized treating physician. The plaintiff has shown that a change of physician is reasonably and medically necessary. N.C. Gen. Stat. § 97-25.
2. The approval of Dr. Derian as plaintiff's authorized treating physician is not an approval of surgery if surgery is not reasonably required to effect a cure, give relief, or lessen the plaintiff's disability. N.C. Gen. Stat. § 97-25.
 ***********
Considering the foregoing findings of fact and conclusions of law, the undersigned makes the following
 ORDER
1. Dr. Craig Derian is HEREBY DESIGNATED as the plaintiff's authorized treating physician.
2. Defendant shall pay the costs of this appeal.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER